CASE 28—PETITION ORDINARY—NOVEMBER 20.

# Louisville & Nashville R. R. Co. v. McElroy.

### APPEAL FROM MARION CIRCUIT COURT.

100 153
e109 486
f 109 487

100 153
e114 363

100 153
d121 662

100 153
130 404

100 153
f132 552

1. SETTLEMENT OF CLAIM FOR PERSONAL INJURIES—AVOIDANCE OF, FOR FRAUD—TENDER.—Before one can recover on a claim for personal injuries which has been settled by compromise, on the ground that the settlement and compromise were procured by fraud, he must repay the money or tender back the property received in settlement of the claim. The rule is different in cases where the court has control over money or property of the plaintiff out of which it could enforce the repayment.

W. J. LISLE FOR APPELLANT.

1. Before a party can seek the rescission of a contract, alleged to have been obtained by fraud, he must as far as he can, place the parties in *statu quo*.    (Green v. Southard, 2 Ky. L. R., 233; Minor v. Kelly, 5 Mon., 274; Speak v. Warner, 5 J. J. M., 68; 1 Addison on Contracts, sec. 312; Story on Sales, sec. 159; Town's Adm'r v. Waldo, 20 Atlantic Reporter, 325; E., T. V. & G. Ry. Co. v. Hays, 10 S. E. Rep., 350; 83 Ga., 558; Vandervelden v. Chicago & N. W. Ry. Co., 61 Federal Rep., 54; Gould v. Bank, 86 N. Y., 75; Grymes v. Sanders, 93 U. S. Rep., 62; German Nat. Bank v. Butcher, Hide & Co., 16 Ky. L. R., 881.)

2. A servant in order to recover for defects in the appliances of business must establish:    First, that the appliance was defective; second, that the master had notice thereof or knowledge, or ought to have had; third, that the servant did not know of the defect and had not equal means of knowing with the master.    (2 Thompson on Negligence, 1008; Wood on Master and Servant, page 791; Sullivan's Adm'r v. Louisville Bridge Co., 9 Bush, 89; Bogenshultz v. Smith, 84 Ky., 330; Quaid v. Cornwall, 13 Bush, 604; Needham v. L. & N. R. Co., 85 Ky., 425; Baird Bros. v. Deering, 13 Ky. L. R., 271; Kelly v. Barbour, 14 Ky. L. R., 356; Lastetter v. Dailey, 14 Ky. L. R., 926; 3 Wood on Railways, 1454-1456; L. & N. R. Co. v. Bryant, 15 Ky. L. R., 181; Mud River Coal, Coke & Iron Co. v. Williams' Adm'r, 15 Ky. L. R., 847.)

3. Compromises should be encouraged.   (Wood v. Anders, &c., 5 Bush, 601.)

H. W. BRUCE, B. D. WARFIELD, THOMPSON & McCHORD of COUNSEL ON SAME SIDE.

LAFE S. PENCE FOR APPELLEE.

1. The amended answer was inconsistent with the original answer and the court erred in allowing it to be filed.  It came too late. (Sec. 139, Civil Code; Humphrey v. Hughes, 79 Ky., 489; Louisville Underwriters v. Pence, 14 Ky. L. R., 698; L. & N. v. Montgomery, 14 Ky. L. R., 622.)

2. The plaintiff did not have to make a tender of the compromise money, because he does not seek the rescission of a contract, but to show that he did not make it.   (Chicago, Rock Island & Pac. R. v. Lewis, 109 Ill., 120; Mullen v. Old Colony R., 127 Mass., 86; N. N. & M. V. Co. v. Glen, 11 Ky. Law Rep.; Eagle Packet Co. v. Defries, 94 Ill., 599; Illinois Central v. Welch, 52 Ill., 183; Buford v. L. & N., 82 Ky., 286; O'Neil v. Lake Superior Iron Co., 6 Western Rep., 624; Rock Island & Pacific R. v. Doyle, 18 Kansas, 62; Shannon v. Pacific Insurance Co., 83 Wisconsin, 526; O'Brien v. Chicago, Milwaukee & St. Paul R., 57 N. W. Rep., 427; St. Louis, I. M. & S. R. v. Phillips, 66 Federal Rep., 39; Stewart v. Chicago & Eastern Ill., 40 N. E. Rep., 68; Bliss v. N. Y. C. & H. R., 160 Mass., 445.)

3. If a party did not understand fully the contents of a contract at the time he signed it, from sickness, suffering or the use of some drug, he will not be bound by it.   (Bailey's Master's Liability, 482; Stone v. Chicago & W. Mich. R., 66 Mich., 84.)

JUDGE PAYNTER DELIVERED THE OPINION OF THE COURT:

This action was brought by McElroy for injuries which he received on the 10th day of May, 1893, while a section hand in the employ of appellant.   James Roller, as foreman, was in charge of the section men.

While deepening a ditch, near Nelsonville, the beam to the plow, which was operated by an engine, broke, making it necessary to secure another beam; to secure which the foreman, with McElroy and Lev. Shreve, pro-

Louisville & Nashville R. R. Co. v. McElroy.

ceeded with an engine, operated by its fireman, to a point where there was a switch cross-tie, proposed to be used as a plow beam. It was placed on the pilot of the engine to be carried to the point where needed. It was a square piece of timber, about sixteen feet long. Roller stood near the middle of the pilot of the engine, while McElroy stood at one side and Shreve at the other to steady the timber. Roller's face and McElroy's and Shreve's backs were to the point to which the engine was being run. While the engine was running six to eight miles an hour the end of the timber struck a switch stand. McElroy was either thrown from the engine or jumped off in the effort to save himself from his peril. At any rate he fell in front of the engine, which passed over and crushed his ankle, necessitating the amputation of his leg. The timber lacked only about one inch of clearing the switch stand.

The accident, as stated, occurred on the 10th day of May, 1893, and the amputation took place on that night. On the 12th day of May, 1893, the appellant made a compromise and settlement of the claim which is the basis of the action. The receipt which appellee gave is in language and figures as follows, to wit:

"Received of the Louisville and Nashville Railroad Co. seven hundred dollars ($700), in full settlement of all claims and demands on account of injuries to the person and damage to and loss of property sustained by me at or near Nelsonville, Ky., on the 10th day of May, 1893, while a section laborer on said company's railroad.

"Witness my hand at Lebanon, Ky., this 12th day of May, 1893.

His
"Alfred X McElroy."
Mark.

"Witness:
        His
"Alfonso X Chandler,
        Mark,
"B. D. Warfield,
"John McChord."

The appellant pleaded the compromise and settle-ment of the appellee's claim for damages, and further that he has never tendered or offered to pay back the $700 which he received.

The appellee seeks to avoid the compromise and set-tlement. He alleges that, shortly after receiving the injuries set out in his petition and before he had re-covered from the shock resulting from the injuries and amputation of his leg, and while he was in great agony, both of mind and body, when his system was filled with opiates to such an extent that he was not conscious of what he was doing and not able, mentally, to fully un-derstand the purport of the contract, after repeated im-portunities by appellant's agents, he signed the con-tract copied above; that he did not understand its con-tents; that appellant's agents represented to him that the company was not liable to him for the injuries he had sustained; that he would not get anything unless he signed the contract. In short, it is alleged that the

company took advantage of his physical and mental condition and, by fraud and false representations, procured the paper to be signed by him and induced him to accept the $700; that the contract was signed by him "under a mistake of law and of fact as to his legal rights, and the money was so received" by him.

The foregoing is sufficient of the substance of the reply to show the grounds upon which he seeks to disregard the compromise and maintain his suit on the original cause of action.

The company denied all the allegations which tended to show the compromise was obtained by fraudulent conduct or that the plaintiff did not have the mental capacity to make the compromise, etc.

In fact the decided weight of the testimony shows that the plaintiff fully understood that he was receiving the $700 in full for his claim for personal injuries, and fully understood the nature and effect of the transaction. We will, however, assume, for the purposes of the further consideration of the case, that the company took advantage of plaintiff's physical and mental condition and fraudulently obtained his signature to the paper, and had him accept the $700 in compromise of his claim for personal injuries.

The money which he received was placed in bank to his credit by the man who was waiting on him. There is no claim that he was not in his usual mental condition when he afterward drew the money and spent it.

There is not the slightest evidence tending to prove that the money was paid for anything except in compromise of claims for personal injuries.

By this action the plaintiff seeks a disaffirmance of the contract of compromise, and at the same time fails to repay or tender the money he received to effect a restoration of the *status quo*.

Fraud may vitiate or avoid all contracts. Contracts obtained by fraud are voidable at the election of the defrauded party. Bigelow on Fraud, pages 73-74.

The general rule is that when one has received money or property under a contract that is voidable, for fraud or other reason, he must repay the money or tender the property before he is entitled to have the contract rescinded. There are exceptions to this rule.

There are cases where a court of equity would rescind a contract without a repayment or tender by the injured party. For instance, a case which involved the sale of property, wherein the court had control over the property and the distribution of its proceeds. In such cases the court can determine what are the rights and equities of the parties, and adjust them.

This is not a case where the court has any control over the money which the company paid the plaintiff, nor of any property belonging to the plaintiff, out of which the court could enforce a repayment of it. Either the company paid the money to avoid the risk of a greater damage being awarded against it in the event of litigation, or it paid the money in the belief that the expense of the litigation, though it defeated a recovery, would amount to as much or more than the sum paid. It sought to buy its immunity from damages and expense of having the question of its liability determined.

It is not reasonable to suppose that the company would have paid the money if the right of the plaintiff still existed to maintain his action upon the original cause of action.    There is no pretense that the company paid its money as a credit on its supposed liability.    It paid it to extinguish its liability, if such existed.

If upon the trial of the case the verdict had been for the company because the injury was not the result of the gross negligence of the foreman, or the party oper ating the engine, then the plaintiff would have the money and the company the expense of the litigation which it sought to avoid, and the court powerless to enforce a return of the money.

This statement illustrates the correctness of the well-recognized rule which requires a repayment or a tender of the money before bringing the action.

We think the reasoning of the learned judge who delivered the opinion in Vandervelden v. Chicago & N. W. Ry. Co., 61 Fed. Rep., 54, is unanswerable, and it sustains the conclusion we have reached.

We also cite the case of the East Tennessee, Virginia & Georgia Ry. Co. v. Hayes, 83 Ga., 558.

We will briefly review some of the cases cited to sustain the opposing view.

In Bliss v. New York, &c., R. R., 160 Mass., 456, the injury was to the clothing and to the person of the plaintiff.    The receipt taken by the company covered the injuries to his clothing and to his person.    It was claimed the receipt was procured by fraud, and that by the terms of the compromise only the injuries to his

clothing was paid for.   The action was for the injury to his person.   The court held that if the plaintiff was induced to execute the receipt by fraud, releasing for both injuries upon being paid a small sum which was understood by him to be compensation merely for the injuries to clothing, he need not return the money so received before bringing an action for personal injuries.   The claim for injuries to clothing alone was compromised, and the money paid to cover damages to it.   The court was of opinion that it was not necessary to return the money so received before bringing a suit for injuries to the person, for, as a matter of fact, nothing had been paid to compromise that claim.

The inference to be drawn from the opinion is that the court would have decided that a repayment would have been necessary before suit had the money been paid to compromise the claim for injury to the person.

In Stewart v. Chicago R. R. Co., &c ., 141 Ind., 61, the court said "If as alleged the money received was a previous donation and in no way supplied the consideration of the release, there was no duty to return it any more than to have returned previous earnings."

In that case the plaintiff claimed the money was for certain work, while the company claimed it was paid in settlement of claims for personal injury.

In Stone v. Chicago & West Mich. Ry. Co., 66 Mich., 83, there was an offer to return the money and due bill which the party had received on the compromise of the claim for the injuries for which the suit was brought.

In the case of the Union Pacific Railway v. Harris,

158 U. S., 331, the railway company claimed the money was paid in compromise of all matters, while the plaintiff claimed that it was for "expenses of sickness and loss of time for two weeks."

The trial court instructed the jury that if they accepted "plaintiff's account of the negotiation between them as against that of the agent of the railway company, then it would appear that the plaintiff at least did not understand the subject-matter of the negotiation," etc.

The trial court further told the jury that "if the settlement was made with a full understanding of the rights of the parties, the plaintiff then being in a state of health to enable him to transact such business, and upon that you may say the settlement is binding upon the plaintiff," etc.

Chief Justice Fuller, in delivering the opinion, and without quoting from the instruction on the question of tender, said: "And the court further charged the jury that if they made an allowance to the plaintiff they should deduct from it what he had received. The question of the necessity of a tender of the money received before suit is not discussed in the opinion. We can easily see if the money was paid to cover expenses of illness and loss of time why a tender is not necessary to maintain an action for personal injuries, but we are unable to understand, if it was so paid, why the court should have directed it credited on the allowance to the plaintiff."

O'Brien v. Chicago, M. & St. P. Ry. Co., 89 Iowa, 644,

and Railway Co. v. Doyle, 18 Kansas, 64, appear to support the contention of the plaintiff.

In the Kansas case the court said: "He signed a writing which was voidable for want of capacity on his part to execute. Not until the suit was *tried* was he fully informed of the circumstances under which he made his mark thereto, and *hence* we hold that under the facts stated in such reply it was not necessary for him to tender the money back."

The court based its decision on the ground that the plaintiff was not fully informed of the circumstances under which he made his mark to the writing. Without stopping to discuss whether or not the court in our opinion was justified in making the exception to the general rule requiring a tender, it is sufficient to say that in this case the plaintiff knew the circumstances under which the writing was executed, and that the money was paid alone for the injury to his person.

Another case relied upon by plaintiff is Mullen v. Old Colony R. R. Co., 127 Mass., 86. This case fully sustains the conclusion which we have reached in this case. The receipt which the company's agent procured from the plaintiff covered personal injuries. In speaking of the money paid the court said: "If it was paid for the support of the plaintiff till his case should be tried or for a year as a gratuity it is clear that the defendant can not insist on repayment."

The court also said: "And if, after accepting a certain sum in settlement of an unliquidated claim for damages under a contract, one seeks to pursue his remedy for the

damages on the ground that the settlement was procured by fraud, or is not binding upon him, he must first repay the amount received (Brown v. Hartford Ins. Co., 117 Mass., 479). The principle on which these decisions rest is just, but it applies to those cases only where that which was received and which must be returned was the consideration of the contract or settlement which the receiver intended to make and understood that he was making, and which he seeks to avoid by reason of fraudulent practices of the other party which led him to agree to its terms. It does not apply to cases where a party holds out that he gives the consideration for one thing and by fraud obtains an agreement that it was given for another thing."

The court, upon the facts, should have told the jury to find for the defendant.

We have not deemed it necessary to consider the question raised as to other instructions which the court gave or refused to give the jury.

The judgment is reversed, with directions to grant the appellant a new trial and for proceedings consistent with this opinion.